The case we're going to hear this morning is United States v. Sullivan and Mr. Johnson. When you're ready. I see you're almost ready. Good morning. May it please the court, my name is Jeff Johnson. I represent the appellant, Patricia Sullivan, and I have requested to reserve three minutes of my time for rebuttal. That's fine. I'd like to begin with a point on which the government concedes that there was sentencing error. The government argues that it was harmless. I contend to you that it was not harmless. The district court imposed an upward departure against Ms. Sullivan on grounds that are explicitly prohibited under Section 5K2.0, Subsection D, namely acceptance of responsibility and role in the offense. Those are clearly prohibited grounds. The district judge said that she was imposing an upward departure, quoted the language of 5K2.0 verbatim, and listed as among the reasons for the departure the idea that she thought Ms. Sullivan had not accepted responsibility and had played a more aggravating role in the crime than her co-defendant did. The government's position is, yes, that was error. However, it was harmless. Because what the district judge did say on the record was, let me say, I don't think that I've made any sentencing guideline mistakes, but if I have, I would have imposed the same sentence as a variance. The government points to two cases from this circuit, Savion Matute and Rivera-Santana, arguing for the proposition, well, if the judge says she would have given a variance anyway, there's no point in sending it back to her because it's harmless. It clearly didn't affect the sentence. But Savion Matute and Rivera-Santana are an opposite. From this case, those dealt with illegal reentry defendants. And upon entering the United States on their previous entries, they had committed heinous crimes. Mr. Savion Matute had molested a seven-year-old girl. Rivera-Santana had murdered his pregnant wife and also sexually molested a child. And they were each given sentences that were significantly above guidelines. And the point in those cases was, well, even if the guidelines issue had been resolved in the defendant's favor, there is this additional reason that made the sentence reasonable quite apart from anything that was considered under the guidelines. In this case, the rationale for a variance was the same rationale that the court used for the guidelines, which were grounds that, number one, didn't have an adequate factual basis in the record. But it would be a variance in lieu of a departure rather than a variance in addition to because of some other reason. So the same problem that you have with a departure would be the same problem that you have with a variance. I don't think that that can make the error harmless. I think that you can reverse, remand to the district court on that ground alone so that we can have a resentencing. Do you argue that a variance sentence for the reasons explained by the district judge would be illegal? I do. And the reason that I argue that is because what makes it inappropriate under 5K2.0 would make it inappropriate as variance. Because what the Sentencing Commission has said is if you've got a defendant that you feel like has not accepted responsibility or has accepted responsibility, the proper place to deal with it is under Section 3E. And you make the findings on the record. Same thing with role in the offense. And the problem is if you jump over that step in the process and you don't... In a variance, I thought we would focus on the 3553 factors and determine whether the district court abused its discretion in applying those factors to impose a variance. And the court, I think, was troubled by several things with respect to Ms. Sullivan. I think it appears the court was troubled by the impact on the people who testified, troubled by the fact that these were people whom, in ordinary life, she should treat better than she did. They were family, brothers, sisters, cousins. And the fact that she continued to defend her illegal conduct without remorse, saying it was just a failed plan, and I take acceptance for the failed business plan without accepting the criminal conduct. I think all of these troubled the district court quite a bit, and it exercised its discretion to do the variance for that. I think the acceptance of responsibility could be characterized. That was for end of the departure. And it sounds to me like you've got a persuasive argument that you can't depart on a basis that's already covered, as the guidelines point out. But that being said, I thought our earlier opinion said if the district judge indicated that if it was an error, it would still impose the same sentence, then that is the basis, not the underlying factual basis in the cases. The basis is determining whether the district court would do the same thing if we sent it back. And I gather the court would based on what the court said. Maybe I'm wrong on that. Well, I certainly won't speculate as to what she would. She said, you know, or a variance sentence, and she cited 3553 too. It's a blur. You've pointed out a problem in this sentence, and there's no question about it. Well, if I could say this, Judge Niemeyer, and it's a fair point that you're making, that in the two cases that the government cites, you've got this additional reason, and that reason is good enough to impose variance. And so the government basically argues, okay, well, here, even if she made an error, look at what was done to her family members. That was egregious. That would be enough to justify a variance. The government argues, look at the fact that she says we could have made it work. That would be enough to justify a variance. Don't you think the district judge did say that she was troubled especially because these were family members? I do, and I'd like to respond to that. Go ahead. Yeah, I don't. Without question, Ms. Sullivan's conduct is not something that I'm in any way prepared to defend for this court. And she pled guilty. She admitted it was wrong. It's inexcusable. But what I would say is the government cannot identify in any type of conduct that Ms. Sullivan engaged in that her co-defendant, Ms. Johnson, did not also engage in. And this was the government's point throughout these proceedings. The government argued. This is an argument on the disparity of the sentences. It's on the disparity, but I think it also goes to your point as to whether she had sufficient grounds quite apart from the guidelines to impose the variance. Well, the variance. They're related. You know 3553 is where the disparity comes up. It's 353, what, A6 or whatever it is. Correct. And so my argument is that disparity cannot render the error harmless. Because when you look, if you say, okay, let's just look at it as a variance, the reason that the variance can't be harmless is because of the disparity that you have. Well, except she considered a disparity. It was argued to her that she should consider the sentence that she gave to Johnson, the 27-month sentence. And she distinguished this defendant from Ms. Johnson on various factors. But, I mean, she thought she was the brains behind it. She was sophisticated. She used her polish. And she's the one that really went after her family and these types of things. So I think there are distinctions. Now there's a question about, is it too much variance in the case? But that gets hard because it's so discretionary. And we have to say, did the district court abuse its discretion on the disparity? Well, Judge, there's so much going on here. Obviously, we've made many different claims. I think they're all related to the underlying fact that there was no factual basis to distinguish the conduct of Ms. Sullivan from the conduct of Ms. Johnson that would justify variance. Did your client get acceptance of responsibility? Could you repeat the question? In the pre-sentence report, wasn't your client given credit for acceptance of responsibility? She was. She was? She was. Okay. Well, the judge, basically, he could have denied her acceptance of responsibility. You would agree that he gave enough reasons why he could have or she could have denied acceptance of responsibility. And what would your client's sentence guideline have been if she did not get acceptance of responsibility? That is in the record in the June sentencing hearing. She states for the record, and I don't have my finger on the page, as to what the range would have been. The sentence, I know this. I want to say that the sentence that it would have been without acceptance of responsibility, the sentence that she received, and I can address this on rebuttal once I look it up, is still higher than what it would have been. However, I disagree that she would have been justified in denying acceptance of responsibility. One thing that I would point out is that from the very beginning of this case, and you can go back to page 17 of the joint appendix, all the way back at the plea hearing, the assistant United States attorney put on the record that while there was no written plea agreement, it was agreed between Ms. Sullivan and the government that she could have the same three points for acceptance. Most of those agreements all say it's up to the trial judge ultimately to determine. Understood, Your Honor, and you're correct. However, throughout this case, the government never asserted to the court that Ms. Sullivan was being untruthful in the plea agreement stage, at the sentencing hearing stage, to ask for a within-guideline sentence. When the court specifically asked the AUSA, what do you think? Has she accepted responsibility? Mr. Watkins said, well, I can tell you that she's answered all of our questions truthfully, as far as we can tell, and that she's helped us identify her assets. There was no factual basis in the record for the district court to find that she had not accepted responsibility. Well, I think the court explained it pretty well. As a matter of fact, the court linked it all to 3553A. I'm looking at 205 in the transcript. It said, the court finds that the sentence of 48 months more closely represents the defendant's criminal actions, her lack of remorse to the numerous victims, the financial and psychological harm to the numerous victims, and the likelihood that she will commit other crimes. Having so calculated and considered the advisory guidelines and having also considered the relevant statutory factors under 3553A, it is the judgment of the court, et cetera. So there is a blur, because earlier, to be fair to your position, earlier on the previous page she talks about the guidelines and quotes the guidelines. But then she moves over into the variance reasons. And I think her argument about the acceptance of responsibility is based on the fact that when Ms. Sullivan stood before her, she apologized for a bad business plan and said, I am mea culpa. It was my fault. I should have been more responsible about that plan. And it failed, and I didn't have Plan B as a backup, totally missing the fact that she deceived all these people and defrauded them out of this money, which was the charge and the evidence. So your arguments are well taken, and they're not unpersuasive, but the district court may have covered herself in this. I don't know. If I were the government, that's what I would argue. I would say, listen, she got up in front of the judge and said, you know what? If we just had a little bit more time and could have ripped off a few more people, we could have made this work. I don't think that that's what she was trying to say. I think she was trying to say, we could have found a legitimate way to pay these people back. But I would say that what the court found and said that's clearly incorrect is that Ms. Sullivan never expressed remorse or apology to the victims. Now, the government – Well, I mean, she, in the allocution, she said, I apologize. That's the first time. I mean, the victims testified that she never apologized. She never called them and all this. It was very emotional testimony these people gave. It was. And six of them were related directly to contacts to her. And so when she gets up in court, that's the first time she apologizes, but then she apologizes for not having Plan B and apologizes that the plan failed. But as for it being the first time that she apologized to the victims, I can tell you that as a defense attorney, I've got a client and we're still – the case is still pending. Sentencing hasn't happened yet. I'm going to tell my client you're not to have contact with the victims. You're not to make statements to them. Anything you say or do is going to be used against you. There will be an appropriate time for you to apologize, which was at the allocation at sentencing. Yeah, but the allocation at sentence was totally unsatisfying. I mean, she didn't apologize for misleading them and misrepresenting to them the state of affairs. They were deceived into giving up their money. And she did not – I found that – I think that really turned the court off in terms – and if that doesn't fit the guidelines, it does fit 3553. I understand your question. I disagree that the court had a factual basis to say that she didn't express remorse. To me, that's a specific fact finding. The government latched onto this phrase, and I would direct the court to pages 193, 194 of the Joint Appendix. I think the AUSA said something that had a big influence on the judge in reaching this decision. The Assistant United States Attorney said something that was incorrect, not intentionally so, I don't believe, but I do believe that it had an effect on her. And this is beginning at the bottom of page 193 and the top of page 194. He said, think of her – the quote – think of her own words, Your Honor. When you adjourned court, she said, well, I am sorry for some of these people, not all of them. Only some of them she expressed some regret, and I remember her words at that sentencing. They went into this with open eyes. If you go back to what she said at the original sentencing, that's clearly incorrect. She never said that the victims went into this with open eyes. She never said anything to that effect. And she did not say that she was only expressing regret as to some of them. She said, I'm sorry for a couple of people. Then she listed everybody that spoke against her at the sentencing hearing, with the exception of one person, which I think was an oversight. And then she said, if there's anybody else that got caught, I apologize to them too. This is what she said. She says, I apologize. I completely own it because I had a plan to get ahead and make it work, but I didn't have a plan for failure, and it failed. So I'm going to have to pay it back another way. And that is my life's goal is to pay their money back. I had a plan that failed. I'm beyond my time. Can I briefly respond to what you're saying? And then I'll yield to the government and take it up on a rebuttal. Here's what I think went on. I think Ms. Sullivan sincerely, if unreasonably, believed that if they could publicize this book enough, if they could promote these conferences enough, they would find a way to make money legitimately to pay the people back. I don't think that she's denying. She's never denied that she lied to them and took their money. She never apologized for lying to them. In other words, these people didn't give up their money knowingly. They thought there was an $81 million contract and they needed a bridge money. And this was like an investment in a joint enterprise where it was basically no fail. You have an $81 million contract with what's his name? Tyler Perry. Yeah. And so it's like investing in a Broadway play. There are business risks on that. But the remorse problem, she didn't recognize that even at her, she didn't mention it once at her allocution. As a matter of fact, to the opposite, she said, I had a bad plan and I didn't have plan B as a backup if it failed. And you're probably right. She probably had in her mind that I could have made money this way. But that plan should not have included deception. And these other people didn't make their judgment based on, well, we don't know what they may have said, but they clearly were deceived. That's what they said. Ten seconds. Yeah, okay. I'm egging you on. Look at Sharon Johnson's allocution. It was more terse than Ms. Sullivan's. And there was certainly no apology that Ms. Johnson made. So if you're going to make it that was any better in quality than Ms. Sullivan did. So if you're going to make a distinction on that basis, well, she never apologized. It's not the length of it. It's just the opposite. It's she's persisting in the conduct that hurt these people so badly. In her mind she's saying I didn't really do anything wrong except adopt a bad plan and not have plan B. I'm sorry it failed. And I own that. I'm going to have to pay it back another way. And anyway, I do understand your argument. But I'm trying to point out we have a discretionary standard. And the district court is the one that looked at all this. And the question is do we overturn it as an abuse? And maybe. You've made two good points that I understand. Your major points are there was a blurring of the departure and variance reasons. And there was a disparity, inappropriate disparity. I'll yield to the balance of my time for rebuttal. If I still have any time. Oh, no, you have rebuttal. Okay. You have rebuttal. All right. Mr. Watkins. Good morning, Your Honors. My name is Bill Watkins. I represent the government in this case. Your Honors, there's one issue in this case. Was the district court's 15-month variance reasonable? Under Savion Matute, we have two inquiries. Would she have imposed the same sentence absent the guideline determination with the departure? Clearly, yes. She says so on the record. And second, was the ultimate sentence reasonable? Absolutely, Your Honors. Judge Moon, did you? Like you were, sorry, I misinterpreted you. I want to point out this was not a casual decision. We held two sentencing hearings in this case. Judge Hendricks wisely after Ms. Sullivan's allocution. I guess one of the things that the defendant feels aggrieved by in this case is that during the sentencing hearing, you basically equated Johnson and the conduct of Johnson and Sullivan, basically saying they're equal. And all of a sudden, the court comes up with this disparity of 27 months versus 46. And Ms. Sullivan argues or the counsel argues that the court relied on improper calculations under the guidelines, that you can't create a departure based on things that are addressed in other parts of the guidelines, as Section 5K talks about. And blurred that with a variance sentence and used really the guidelines reasons to impose it under the variance. And the second is then when the court finally did sentence, the disparity was too great. First, initially Judge Hendricks did mention the word departure at the first sentencing and put Sullivan on notice. When we get to the second sentencing proceeding, right before she pronounces sentence, she says I'm going to depart upward and in the alternative impose a variance. She was trying to do both. And we do see in the statement of reasons she goes back and forth between those. I agree. I think Mr. Johnson's correct. If we just had a departure here, we would have had prohibited grounds there. But, Your Honors, there is no law whatsoever that if the guidelines, say, take into account for departure purposes a certain factor like role in the offense or something like that, that you cannot consider that under a 3553A analysis. Your Honor, I printed out, this is a list of departure provisions are in the very back of your guideline manual on page 617. There are two extensive pages here. If you bought what Mr. Johnson is trying to sell on behalf of his client, for example, a judge because, say, the money amount under 2B1.1 is taken into account in the guidelines, a judge couldn't find that, well, in light of the extensive loss to the victims in this case, I'm going to vary upward. Or because there's a victim enhancement in 2B1.1 that the judge couldn't take into account the number of victims. That's just not the law, and there's no case that's been cited for that proposition. You can obviously consider those matters in a variance request. How often do defense lawyers bring up those matters such as, say, there's a minor participant role. If you're a minor participant in a conspiracy, between a four and a two level decrease. But we hear often in variance motions, well, my client wasn't that involved, was a minor player. And this court, in a number of cases, is upheld going up or down based on role. So I don't think there is any law to support that fact. And Judge Niemeyer, I absolutely, when I went into court, I'm a white collar prosecutor. A lot of my people don't go to prison. I was simply asking for a guideline sentence and was going to make the best presentation I could to get that in this case. When asked were they equal partners, I said, sure, they're equal partners in this venture. However, I also distinguish, but without Ms. Sullivan's polish, her education that she brought to this conspiracy, it could have never gone as far as it did. That would be, for example, I could be equal partners. Judge Traxler retired. I know he's taken senior status, but if he retired and wanted to be law partners with me, we could be equal partners. But people are going to come to that firm because he's William B. Traxler. He served on the Fourth Circuit. He's a longtime prosecutor before he ever was on the Fourth Circuit. We're equal partners, but without his pedigree, our firm is not going to go that far. And I think that's what I'm getting at there. Have you broached that subject with him? Don't answer. I have not, Your Honor. I'm happy with my civil servant's salary here. So, and again, it doesn't really matter what I think came in there thinking they're equal partners or not. It's what Judge Hendricks saw, and it was reasonable, judges. I'll tell you, the best piece of evidence I put up and probably what got us to the departure variance language, nothing I did, it was Patricia Sullivan's own allocution. And, judges, I will tell you, you've got the cold, hard record here, and, Judge Niemeyer, you've read from it and some of the outrageous statements. But as I sat in that chair right there as Ms. Sullivan was up, I thought to myself, and she's digging herself a hole, this is the best thing that's happened to my case today, and I'm literally waiting for the federal public defender, who is a friend of mine, to give the old FPD karate chop to say, woman, please stop talking. Because the just contempt for her family and the victims, you've sent some of it on the paper. But I will tell you, as Judge Hendricks said, that she noticed this attitude about Ms. Sullivan. Obviously, credibility determinations and those sorts of matters, the district judge is in the best place to see. Even on the paper, you tell me you've seen that. But I tell you, I would ask you to give her great deference on that point, because this was one of the most appalling allocutions that I've ever seen with a courtroom packed full of victims there. So, judges, I believe that Judge Hendricks had ample reasons to vary upward. She does differentiate between the defendants as to why she wanted to go upward. Those reasons are amply laid out from the targeting of family members to her polish, her skill. In short, this is what this court wants judges to do. I've been involved in cases. I was argued in for the government back to start the failure to explain line of cases. And I understand what this court wants with an explanation. This judge did it. This was a full explanation. There's no one who's read this record, and there's no one in the courtroom that had any doubt why she did what she did. She properly evaluated the case, made extensive findings. As I pointed out in my brief, they're all supported in the record. They're not clearly implausible.  Unless you have any particular questions for me, I will sit down and rest on my brief. Thank you, Mr. Watkins. Mr. Johnson. Judge Moon, you had asked me about what the guidelines range would have been if she had denied acceptance. That's on pages 200 and 201 of the joint appendix. The range in that case would have been 37 to 46 months. So it still would have been an upper variance based on what she actually received, not quite as much, but it still would have been above that. Mr. Watkins and the district court talk about Ms. Sullivan's policy, the fact that the scheme could not have succeeded without her. The problem that I see with that, and it's a big problem, is there's nothing in the record that supports that. You don't have witnesses who come up and say, well, they came and pitched this scheme to me, but you know what, if it didn't have the postmaster general of Greenville there, I wouldn't have invested in it. It's an assumption that's made, well, because you have a postmaster and because you have a woman that's been in and out of the legal system. Two of the, one of them said because of her position and achievements, and the other one said because she was postmaster. These people testified during the hearing that they trusted her because of that. I disagree that there's anyone who said that they trusted her because she was postmaster. Barry Blackwell did testify that he trusted her based on her accomplishments. He didn't specify what those were. Barry Blackwell was a personal friend of Ms. Sullivan's. That's what these two defendants did. They did the same thing. The government argued that they did the same thing. They went around to their family and friends and asked them for money. Sullivan went to her family. Johnson went to hers. So the individual victims were harmed egregiously. You look at the people that are listed on that restitution table in the district court's judgment, most of those folks are not people who testified against Sullivan. The majority of those victims are not attributed to Sullivan specifically in the record. Couldn't the judge in this case have heard the way he could have, she could have interpreted what the defendant said was, well, I intended to make good to these people. I knew I was lying, but I thought I'd pay it back. And that's what any embezzler would say. If I went to Las Vegas and got a jackpot, I'd come back and pay it back. But what she didn't appreciate and what she showed no appreciation for the fact, that she put the risk on these innocent people. And she's talking like she's the victim, showing no empathy for the people she's defrauding. And that's what I pick up that I thought the judge was focusing on. It was all, I didn't really do anything wrong because my intent was to win back the money and then they would get theirs back. Question well taken, Judge Moon, but what I would say is that she never blamed the victims. And certainly looking back, had I been giving her She didn't blame them, she just didn't appreciate the position she put them in when she made her initial decision to lie to them. I understand, Your Honor. But there was a specific finding by the district judge, based on a statement that the AUSA had made, that she had blamed the victims. And he specifically said, she told us in the initial sentencing hearing, that they went into this eyes wide open, implying that they knew what was going on. The problem is Ms. Sullivan never made that statement at either of these sentencing hearings. Never blamed the victims. I think that incorrect representation to the court had an influence on her ruling. Also, to briefly address something that Mr. Watkins said about, well, you can always, in a variance, there's nothing that prohibits the judge from going up or down and it happens all the time because defendants say, well, my acceptance of responsibility is extraordinary and therefore I deserve a lower sentence. Fair enough, but what the district court cannot do is skip over the factual findings in 3E or 3B or make findings that are inconsistent with the variance that's ultimately reached, which is what happened in this case. And I would ask you to consider the situation, what if you had a district court who under 3E says, I find that this defendant has lied to me in this courtroom, they're continuing to go online and make disparaging comments about the victims on social media, has shown absolutely no remorse, I'm going to give you zero levels for acceptance of responsibility. And then later in discussing the 3553 factors says, I think this defendant really understands that what he did was wrong, therefore I'm going to give him a downward variance. Certainly the government would object and would rightfully appeal that. That's essentially what you have when she accepts the findings and the representations of the government. We were always going to give her acceptance. The PSR recommends that she receives acceptance. She's answered all of our questions correctly. The judge finds that as a matter of fact in adopting the PSR and then says, well, I could have denied you acceptance, but rather than doing that, I'm going to give you an upward variance. It's simply inconsistent with what the judge had done before and has no factual basis in the record. And I think you understand my arguments. And so on the basis of those and others that are contained in the brief, I ask you to vacate the sentence and remand it to the district court for re-sentencing. Thank you, Mr. Johns. I notice that you're court appointed, and, again, I want to recognize that it's important service, and you've done a very good job, I can tell you. Thank you very much. Thank you. We'll come down, adjourn court for signing die, and then come down. Reconciled. This honorable court stands adjourned, signing die. God save the United States and this honorable court.
judges: Paul V. Niemeyer, Barbara Milano Keenan, Norman K. Moon